Good morning, Your Honour. My name is Daniel Fong. I represent the petitioner. Good morning. Your Honour, my client has clearly demonstrated other resistance to China's coercive family planning policy. Under Jiang v. Holder, the fact of the forced abortion of my client's wife is proof of my client's resistance to the policy because my client neither supported or acquiesced in the forced abortion. Well, first of all, we have to begin by saying there's nobody on this panel who likes this policy and there's nobody on this panel who's necessarily excited about having to make a decision in this area. But we are guided by a matter of JS, aren't we? Yes, Your Honour. Which is a matter of JS says the spouse of a woman subject to forcible abortion may qualify only if he was persecuted for his failure or refusal to undergo an involuntary procedure or for other resistance. And number two, if he has a well-founded fear of being forced to undergo such a procedure or for other resistance. And three, specific facts. So are you going under number one? Yes. And so you're suggesting there is other resistance? Yes, Your Honour. Okay. So the BIA says merely having a baby or merely having the chance to have a baby without more is not an overt act of resistance. So that's probably true. So what do I do with Lynn? Your Honour, the BIA assertion that impregnating one's spouse is not an overt act of resistance is a red herring. It's a red herring, so we don't need to think about it. So what do I do with Lynn? Your Honour, there's no requirement that one need to physically or verbally... That's what Lynn suggested, right? That there had to be a physical altercation? No, but in matter of, in Jang v. Holder, this Court does not say, does not require opposition to be physical or verbal, Your Honour. And my client did oppose the policy. He actively resisted the policy by hiding his... Have you seen Lee, have you seen the case He versus Holder? Have you seen that case? It's a new one. I believe so. It's where the plaintiff got married underage, had some children prior to being allowed, attempted to conceal his marriage, and the Court, our colleagues said, that does not, that is not a showing of other resistance required for defiance. So how do we go around that? Your Honour, this case can be distinguished from He because my client actively resisted the policy by asking his wife to go to a private clinic to remove the IUD. That's a blatant violation of the Chinese family planning policy. He also hid his wife from the authorities. Well, but it seems to me that if we look at He just hiding or attempting to conceal what happened is not enough. One's got to do more. Yeah, he did more. He asked his wife to go to a private clinic to remove the IUD. He also lied to the Chinese authorities about the whereabouts of his wife and also tried to lie to the authorities to get the sick leave for his wife. So to me, it is active resistance to China's family planning policy, Your Honour. Counsel, Judge Gould, if I could interject a question there. It seems to me, and I'm just one judge on the panel, but it does seem to me you've got a pretty good case that there is other resistance to the China family planning policy because he lines up a doctor to take out the IUD. He arranges to get his wife continuances from her job so she doesn't have to go in. He parks her at the aunt's house. He does a number of different steps that at least for me are enough for resistance. But the problem I have with the case is what is the evidence that shows that he was persecuted on account of that resistance because he wasn't arrested, he wasn't grabbed by the authorities, he wasn't beaten, there was one threat that he might be sterilized if he had another kid, but that's somewhat speculative. So how do you make out a case of actual past persecution that would give rise to a favourable presumption? Yes, because according to the court's decision in Jiang, it says that the matter of JS makes it clear that the forced abortion or sterilization imposed on one's spouse is proof of the fact that the petitioner was persecuted and no additional evidence of persecution needs to be offered. And in this case, my client's wife suffered forced abortion and he neither supported nor acquiesced in it. That by itself is sufficient to establish persecution under the matter of JS according to the court's decision in Jiang v. Holder. If I look at matter of JS, it doesn't seem to me that in that particular situation it really applies here. I look at matter of MFW and LG, here this was a female petitioner rather than a male petitioner, so that really isn't applicable here. If I look at the record, it's my understanding from the record that he did not resist the policy when she was first supposed to be sterilized. In fact, it's my understanding from the record that at that time he did not resist, that they even told people they didn't intend to have a child. Do you mean my client, the petitioner? Yes. In June, when June was fired and openly criticized at a public meeting and then she was unable to get employment, the director of the birth planning came to the home and said if they ever attempted, Wu would be sterilized. At that point, it seems the record suggests that he did not resist, but said he didn't intend to have a child, and they inserted the IUD. Your Honor, opposition does not require one to work on the IUD. It seems to me to be that when he was trying to show the resistance, it's not very clear. I mean, all I've got to have is substantial evidence to sustain what was done below. And so I'm looking at these facts, and I'm saying why is that not substantial evidence? At the time when they were going to put in this IUD, she was fired. They said at that point, well, we don't intend to have a child, so that's not a problem. Then thereafter, once they got pregnant, then he says he's stressed. But I guess my worry is if I'm looking for substantial evidence to sustain what happened below, there it is. But after my client's wife was pregnant, he actively resisted the policy. Well, then he started to hide her, right? Yes, Your Honor. Well, then you get to Judge Gould's question, even if there was resistance, was there past persecution? Because Lim says unfulfilled threats without any more is not past persecution. It only talks about extreme cases. Repeated and especially menacing death threats can constitute past persecution. Your Honor, that's not an unfulfilled threat. My client credibly testified that the director of the birth planning office threatened him with sterilization. Once, right? Yes. Once. Because the threat is so severe that even a one-time threat is sufficient to establish a well-founded fee of persecution. Do you have a case counsel that says that? Yes. That says a one-time threat of that nature is sufficient? I cannot think of any case now, but this court has held that even a 10% chance of persecution may establish a well-founded fee. El Harbor v. INS. A 10% chance is sufficient to establish a well-founded fee. Thank you. I think your time has expired. Thanks, Your Honor. Good morning, Your Honor. May it please the court. My name is Dawn Conrad, and I'm here today on behalf of the U.S. Attorney General. In this case, the record does not compel the finding that Petitioner met his burden of proof for asylum, withholding of removal, or cat protection. The board properly found that Petitioner did not demonstrate other resistance to China's population control policy. Other resistance is not defined in the INA, but has been described in the case law of the BIA and this court. As Judge Smith pointed out earlier, in Lynn, the court defined it as an individual can resist physically or vocally. And in matter of SLL, the BIA defined it as expressions of general opposition, attempts to interfere with the enforcement of government policy, and other overt forms of resistance to the population control policy. This is a counsel-judge question. So on that standard which you just read, I think, was it from MFW? No, that was from matter of SLL. SLL. Okay. Okay. Well, under the standard you just read, why wouldn't it be an overt act of resistance for him to get her a continuance from her work, to get a doctor to take out the IUD, to secret her away at the aunt's house? Because he's taking a group of coordinated steps, not just to hide her, but to get a doctor to take the IUD out, which was probably illegal in China. And I don't see why that isn't sufficient under the standard you read. Because what we see in the case law is that the petitioners that demonstrate other resistance are doing something that brings them to the attention of Chinese family planning officials. And the problem with this case is none of the resistance was discovered, or nothing was discovered until his wife had an abortion. And at that point... But why isn't that like a so what? I mean, so they didn't discover it, but he did it. These are overt acts. I mean, I have some problem with whether he sufficiently shows persecution, but I don't really understand why he has to do the resistance under the nose of the authorities. Well, the pattern is that in order to be persecuted, it has to be shown that it's on account of the other resistance. And he hasn't shown that he was persecuted. We agree with that, Your Honor. And also that the persecution... as a consequence. I don't believe there's a lot of evidence in the record about what kind of economic disadvantage there was, but his wife did lose the job, her job. But Petitioner has not shown that that rises to the level of persecution or that affected him significantly. Well, I guess... What is severe economic sanction? That's what I was... What is... I mean, the question is what he's asking is the question I was going to ask. I believe with the case law, I don't have this in front of me, but it's like severe economic deprivation that deprives the Petitioner of life and liberty  Does the record show whether he had a job himself? Yes. Or his wife loses her job? Does the record show whether he had a job and sufficient income to live on? I don't believe there's any evidence in the record about his income, but yes, he did have a job, and that's actually how he arrived in the United States. He came on a visa to attend a trade show. So he was still employed as of the time he came to the United States. It seems to me that we have two issues that are of some importance here. The first is whether he used, if you will, other resistance. Are you suggesting that doing what he did with his wife, as Judge Gould has outlined, plus secreting her at the aunt's and doing all of that is not enough? Yes, Your Honor. What case would I best look at for that? Well, I think the court cited a recent one in Hay v. Holder that would support that finding. And also, just looking at the general case law of this court where there has been other resistance found, Zhang, Lin, Lee, those are all cases where the petitioners vocally or physically resisted the enforcement of a family planning policy in front of family planning officers or government officials, and in those cases, the court all found that other resistance did occur. So you're saying it doesn't meet the burden that Zhang, Lin, and Lee would outline? That's correct, Your Honor. So are you saying that other resistance only means you have to be actually, you know, you can only resist by, in effect, trying to interfere with a particular procedure or some sort of direct confrontation with an official? Not necessarily a direct confrontation. I wouldn't limit it as much as that, but perhaps something that the government officials became aware of that showed other resistance in some way, either vocally or physically interfering with the enforcement of the policy. Counsel, I understand your position on that, and you can patch together a number of prior cases where that's, in fact, what is involved. But I just have so much trouble seeing that as a prerequisite to resistance. Like if somebody secretly steals money from a bank, they don't do it visibly. They don't march in with their guns blazing in front of the police or guards. They secretly get the money out of the bank. Aren't they actively resisting our policies against thefts? Yes, Your Honor, but then the police would presumably know they were doing that when they were caught. There would be no question that there had been a crime committed in that case. And the situation could be different here if Petitioner had vocally or physically resisted his wife's abortion or brought himself to authorities' attention after his wife's abortion. There might be such an example of other resistance. But in this case, you don't have the authorities having any knowledge that he was resisting the policy. I think that's the problem. I might be a voice alone on this, but it's going to be difficult for you to persuade me that this isn't resistance. So for my vote, I'd like you to focus on whether there's persecution on account of what he did. Right. Yes, Your Honor, and that was going to be my next point, is that we agree with you that there's not really evidence in the record that there was any persecution as a result of the resistance. You don't have any evidence that there was a fine imposed, that he was never arrested, detained, sterilized, physically mistreated, or fined by family planning authorities. We have one threat of future sterilization that was speculative because it was based not on his wife's current pregnancy because, of course, at that point she had already had an abortion, but as a threat to what might happen if they were to have another child. And if you look at cases where there has been a fine of past persecution, in Zhang the alien was expelled from school, detained by officials, heavily fined, and his marriage ceremony was interrupted by family planning officials. In Li, the alien was subject to a very intrusive physical exam and issued an order that she could never have a baby. So we're talking here generally about asylum. Do you think that this is also as evidentially solid as it relates to withholding? Yes, Your Honor, because the burden is as a heavier... There's a different burden, right? That's correct. That's correct, Your Honor. He has to show that it was more likely than not that he will face persecution on account of a protected ground. And because he has, in our position, failed to meet his burden of proof for asylum, then he likewise fails to meet his burden of proof for withholding of removal. Can I ask you one question? Sure. I believe that the IJ said that Wu had failed to engage in other resistance because, quote, there was nothing for Wu to resist since what was occurring to his wife happened in his absence. Is that an accurate statement of the law? That's a good question. I would argue that there are always things that he could have resisted besides just the abortion, but I think the IJ is saying that he didn't physically resist that one instance. At that time? At that time. Because he wasn't there. Right, he wasn't present. But was that a correct legal standard? Because I think you would agree that he doesn't have to have been there and have protested, so they seem to suggest that there was nothing for Wu to resist since what was occurring to his wife happened in his absence. Is that an erroneous standard that they applied? I think they're just the IJ perhaps could have stated it better but was talking about that one specific instance. The Board looked at it correctly of whether there was a general pattern of other resistance, however. I see your time is up. Okay, thank you. We respectfully ask the Court to deny the petition for review. Thank you. Judge Gould, did you have any further questions? I'm sorry, I didn't mean to interrupt you. I didn't, no, but although I don't mean to screw up the conducting, I would appreciate it if we could let Mr. Fong have 30 seconds to a minute of rebuttal because I'd like to hear what he says in response to the good arguments made by the government. I'm glad to do that, Judge Gould. You are absolutely the presider and the conductor will follow right along behind whatever you want, but I was going to do it anyway. You have 30 seconds, Mr. Fong. Your Honour, this Court has never held that one needs to physically or verbally assert one's opposition to this policy, to China's family planning policy. Opposition can take many forms, many ways. I think what you really need to get to, you've at least got one convert on that, Judge Gould. He's even told you what his vote is going to be. Get to past persecution. If you're going to get him, you've got to get there. What did he do to show past persecution, even if resistance? Your Honour, his wife suffered forced persecution. He is the father of the aborted child. And according to the decision of this Court in Jiang, that the forced abortion or sterilization of one's spouse is persecution. And that's very clear. What's the citation of the Jiang case you're referring to? Because that's a common name. Jiang was his holder. Yeah, but what's the citation? 6-11-5-3-10-86. Thank you, Counsel. Excuse me, can I ask you one more question? Come back, Mr. Fong. Judge Corman wants to ask you a question. His wife lost her job as a result of this. Your client's wife lost her job as a result of this. Yes. What happened to your client? Did he lose his job? I cannot tell from the record, Your Honour. He came over to the U.S. and got the same job. Didn't he come here on a trade show? Yes, but he did not lose his job. But the fact that his wife lost his employment caused economic difficulty to him. Well, but I wondered where in the record you argued that to the IJ or the BIA. I saw it in your brief. You stated in the opening brief one sentence about it, but I then went to the IJ or the BIA's record to see where you'd argued for economic relief, economic harm in that, and I didn't see anything. Nothing about economic persecution to the BIA or the IJ. Didn't that waive it? Because they didn't talk about it. Your Honour, the economic deprivation is not necessary to persecution in this case. The persecution is really the wife's false abortion. All right. Thank you. Thank you. Case 10-73499, Wu v. Holder, is submitted, and we'll move to Case 10-72725, Chai v. Holder. Thank you.
judges: Korman, GOULD, SMITH